IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS E. MARTINEZ, | No. C 08-3911 WHA (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| vs. | |
| JAMES A YATES, Warden, | |
| Respondent. | |

## INTRODUCTION

Petitioner, a California prisoner proceeding pro se, filed this habeas petition pursuant to 28 U.S.C. 2254. Respondent was ordered to show cause why the writ should not be granted based upon petitioner's two claims for relief. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has filed a traverse. For the reasons set forth below, the petition is denied.

## STATEMENT

On September 8, 2003, the Alameda County District Attorney filed an information charging petitioner with one count of rape (Cal. Pen. Code § 261(a)(2)), and four counts of oral copulation (Cal. Pen. Code § 288a(c)(2)). The district attorney alleged that petitioner used a deadly or dangerous weapon in the commission of each offense (Cal. Pen. Code §§ 667.61(e)(4), 12022.3(a)), and that petitioner committed a qualifying sex offense against more than one victim (Cal. Pen. Code § 667.61(e)(5)) (Resp. Ex. A at 144-152).

On July 28, 2004, a jury convicted petitioner on all counts and found the deadly or dangerous weapon enhancements charge to be true (Resp. Ex. A at 314). On November 30, 2004, the trial court sentenced petitioner to an indeterminate term of 56 years to life in state prison (Resp. Ex. A at 339). Petitioner unsuccessfully appealed the judgment of conviction, and on May 9, 2007, the California Supreme Court denied his petition for review (Resp. Ex. G).

Petitioner's conviction arises from his sexual assault of two women with whom he was acquainted on two separate occasions. Petitioner forced the first victim to orally copulate him three times, and he forced the second victim to orally copulate him once before he raped her. He wielded a knife in both instances. The claims raised herein do not require a more detailed description of the facts underlying conviction.

## ANALYSIS

### A. STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority under the first clause of Section 2254(d)(1) only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority

2

1 under the second clause of Section 2254(d)(1), if it correctly identifies the governing legal
2 principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts
3 of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ
4 "simply because that court concludes in its independent judgment that the relevant state-court
5 decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather,
6 the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), amended, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome Section 2254(e)(1)'s presumption of correctness; conclusory assertions will not suffice. *Ibid.*

Under 28 U.S.C. 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340.

**B.   ISSUES PRESENTED**

As grounds for federal habeas relief, petitioner asserts that: (1) the prosecution impermissibly struck African-American jurors on the basis of their race in violation of his rights under the Equal Protection Clause, *see Batson v. Kentucky*, 476 U.S. 79 (1986); and (2) he was deprived of his Sixth Amendment right to effective assistance of counsel, *see Strickland v. Washington*, 466 U.S. 668 (1984).

1.   Peremptory Strikes

Petitioner claims that the prosecution impermissibly exercised peremptory challenges to strike three prospective African-American jurors on the basis of their race, in violation of the Equal Protection Clause.

a.   Background

The California Court of Appeal summarized the relevant trial court proceedings. *People*

3

*v. Martinez*, 2007 WL 215219, 8-15 (Cal. Ct. App. 2007). Jury selection occurred over the course of seven court days, beginning on June 22, 2004. *Id.* at 8. The prosecution exercised three peremptory challenges against African-American women who were part of the venire: Juror Nos. 3, 34, and 147. *Ibid*. Petitioner made two motions challenging the dismissal of these women pursuant to *People v. Wheeler,* 22 Cal. 3d 258 (1978), and Batson v. Kentucky. *Ibid*. In each instance, the trial court found that the defense made a sufficient prima facie case to draw an inference of discrimination, but that the prosecutor offered rational race-neutral reasons for his strikes, and the trial court denied the defense motions because there was no purposeful discrimination. *Id*. at 13-16.

Petitioner raised the first *Wheeler* motion in response to peremptory strikes entered against Juror No. 3 and Juror No. 34. *Id*. at 12. The prosecutor dismissed Juror No. 3 after she described negative experiences with law enforcement: she had been wrongly identified as a potential crime suspect and her daughter had been stopped while driving a car similar to one described in a shooting. *Id*. at 11. She believed that police "hide behind [their] badges and do . . . . things that aren't right," and sometimes single people out due to their minority status. *Id*. at 12. The prosecutor struck Juror No. 34 after she stated her belief that the criminal justice system was ineffective, and described herself to be "very emotional." *Ibid.* She also believed law enforcement tended to stereotype people. *Ibid.*

The second challenge arose after the prosecution dismissed Juror No. 147. *Id*. at 16. The prosecutor cited unease with the prospective juror's lengthy association with the Delancey Street Foundation as a reason for the dismissal. *Ibid.* The foundation helped convicted individuals rise above the legal system and become productive citizens. *Id*. at 15. Juror No. 147's work with the foundation included living on-site next door to convicted felons. *Ibid*.

The trial court denied both *Wheeler* motions, the appellate court affirmed, and the California Supreme Court denied review.

### b. Analysis

The Equal Protection clause precludes challenging potential jurors solely on account of their race. *Batson*, 476 U.S. at 89. A party may raise an equal protection claim on behalf of a

4

juror excluded because of the juror's race, regardless of whether the party and the excluded juror share the same race. *Powers v. Ohio*, 499 U.S. 400, 406 (1991). A violation of equal protection under *Batson* is established in a three-step process: (1) the defendant must make out a prima facie case that the prosecutor exercised peremptory challenges on the basis of race "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose"; (2) if the prima facie case is established, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question; and (3) if the prosecutor carries the burden of showing a race-neutral explanation, then the trial court must determine whether the opponent of the strike has proved purposeful discrimination. *Johnson v. California*, 545 U.S. 162, 169 (2005).

Here, the first step of the *Batson* prima facie case of discrimination is met. The defendant is required only to raise an inference of discrimination based upon the totality of relevant facts. *Ibid.* In fact, the U.S. Supreme Court has recognized that a "black defendant alleging that members of his race have been impermissibly excluded from the venire may make out a prima facie case of purposeful discrimination." *Batson*, 476 U.S. at 93. Petitioner and the challenged prospective jurors in this case are African-American. Moreover, petitioner alleged with respect to Juror No. 3 that she blamed a third-party, not the police, for her misidentification, and had put the issue behind her. *Martinez*, 2007 WL 215219 at 12. Petitioner contended that Juror No. 34 was emphatic in asserting that her prior experiences with law enforcement would not color her judgment here. *Id.* at 12. Finally, petitioner argued that Juror No. 147 never worked as an advocate with Delancey Street Foundation, but rather in a clerical position, and that her experiences there constituted no more than an interest in community volunteer work. *Id.* at 16. These facts are sufficient to raise a threshold inference of discrimination under the first prong of the *Batson* analysis.

If the defendant establishes a prima facie case of discrimination, the second step under *Batson* requires the prosecution to offer a race-neutral explanation for the strike. *Johnson*, 545 U.S. at 169. This phase of the inquiry focuses on the facial validity of the prosecutor's explanation. *Hernandez v. New York*, 500 U.S. 352, 360 (1991). Unless discriminatory intent is

5

inherent in the prosecutor's explanation, the justification will be deemed race-neutral. *Ibid.*

As an initial matter, petitioner argues that because the trial court, and not the prosecutor, offered race-neutral reasons for excusing Juror No. 3, the second step of the *Batson* inquiry was circumvented. *Martinez*, 2007 WL 215219 at 15. When petitioner objected to the peremptory challenge of Juror No. 3, the trial court stated that the two incidents leading her to believe that police treated her and her daughter unfairly due to their race may be "sufficient reason for the People to have exercised a peremptory challenge." *Id.* at 13. The record indicates, however, that the prosecutor expressly endorsed the trial court's reasons to challenge Juror No. 3; the prosecutor stated "there are some points *in addition to* what the Court has brought out" about Juror No. 3 that the prosecution found to be objectionable. *Id.* at 14. The trial court did not require the prosecutor to articulate those additional reasons, but there was no flaw in the *Batson* proceedings because the prosecutor expressly adopted the reasons suggested by the trial court.

For purposes of *Batson's* second step, Juror No. 3's belief that law-enforcement treats minorities unfairly, based on her experience of law-enforcement, is a race-neutral justification because a person of any race could harbor such a belief. This belief is also a legitimate justification for excusing this juror because it could create a substantial bias against the prosecution, particularly where, as here, the defendant is a member of a minority racial or ethnic group. Therefore, the state courts could reasonably find the prosecution's justification for excusing Juror No. 3 to be a race-neutral and legitimate, in satisfaction of the second *Batson* step.

The prosecution also satisfied the second *Batson* step with respect to Juror No. 34 and Juror No. 147. The prosecutor noted that Juror No. 34 committed several misspellings in her written responses, leading him to conclude that she had not received a good education. *Martinez*, 2007 WL 215219 at 14. An individual's degree of education could affect the ability to evaluate the facts of a case. The prosecutor also cited Juror No. 34's distrust of the criminal system, which is significant because a juror's skepticism of the criminal justice system may give rise to substantial bias. These are also race-neutral justifications because the juror's poor education and bias against the criminal justice system are not factors that are dependent on her

race.

As to Juror No. 147, the prosecutor cited his unease her volunteer work in which she lived and worked in close proximity with convicted felons over a long period of time. *Id.* at 16. This, coupled with a stated desire to help individuals rise above the legal system, may skew an individual against the prosecution's case. Furthermore, such a tendency could manifest itself regardless of the juror's race. Accordingly, the state courts could reasonably conclude that the prosecutor presented race-neutral bases for dismissing Juror No. 147 and Juror No. 34 at *Batson's* second step.

Petitioner has also failed to prove that the prosecution engaged in purposeful discrimination in the third step of the *Batson* analysis. The third step requires a judge ruling on an objection to a peremptory challenge to engage in a sensitive inquiry into the circumstantial and direct evidence of intent as may be available. *Batson*, 476 U.S. at 93. The crux of the inquiry rests in determining whether the prosecutor's proffered race-neutral reasons should be believed. *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003). The best evidence for this determination is often the demeanor of the attorney exercising the challenge. *Ibid.* Deference to trial court findings on the issue of discriminatory intent is necessary because the trial court is in the best position to evaluate prosecutorial demeanor and credibility. *Ibid.*

The prosecutor recognized that Juror No. 3's negative experiences with law enforcement could prejudice her against the prosecution's case. Despite petitioner's assertion that Juror No. 3 blamed a third-party rather than the police for her own misidentification, she was also affected by her daughter's negative law enforcement treatment. Her negative beliefs about law enforcement are reasonable bases for determining that the prosecution lacked discriminatory intent in excusing Juror No. 3. *Martinez*, 2007 WL 215219 at 14. The same reasoning applies to the prosecution's discharge of Juror No. 34, who harbored an inherent distrust of the criminal justice system. That mistrust could reasonably be viewed as impairing her ability to receive and assess police testimony impartially, creating a genuine concern which motivated the prosecution's challenge. Similarly, Juror No. 147's relationship with convicted felons and desire to help them rise above the legal system may render her less able to deliberate in an unbiased

7

1   manner. In addition, the trial court had the opportunity to assess the prosecutor's demeanor, and
2   petitioner points to nothing in the record suggesting that it was unreasonable for the trial court to
3   find him credible.

4   In determining that the prosecutor had not engaged in purposeful discrimination under
5   *Batson*'s third step, the state court also conducted a comparative juror analysis. *Id.* at 19-20.
6   Comparative juror analysis – i.e., determining whether non-challenged jurors possess any of the
7   characteristics on which the prosecution challenged jurors in the protected group – may tend to
8   prove discrimination at the third *Batson* step. *Snyder v. Louisiana*, 552 U.S. 472, 484-85 (2008);
9   *see also Kesser v. Cambra*, 456 F.3d 351, 360 (9th Cir. 2006) (comparative juror analysis
10  principles are clearly established Supreme Court law for AEDPA purposes").

11  Here, petitioner noted that the prosecution did not challenge Juror No. 4 or Juror No. 46,
12  despite their negative views of police; similarly, Juror No. 27, Juror No. 33, and an additional
13  juror were unchallenged despite being highly "emotional." *Martinez*, 2007 WL 215219 at 14.
14  Petitioner maintained that the sole difference between challenged Juror No. 34 and the cited
15  jurors was that Juror No. 34 was an African-American woman while the latter was not. *Ibid.*
16  Consistent with the federal standard, the Court of Appeal focused its comparative analysis on
17  Juror No. 27, who was the only potential juror petitioner cited who was ultimately seated as a
18  member of the jury panel. *Id.* at 18; *see Miller-El v. Dretke*, 545 U.S. 231, 241 (2005) (in
19  conducting a comparative juror analysis, the court compares the responses of the challenged
20  jurors to only those of venire members who were actually seated as jurors). The Court of Appeal
21  recognized that Juror No. 27 described herself as highly "emotional" – as did Juror No. 34.
22  *Martinez*, 2007 WL 215219 at 20. However, Juror No. 34, unlike Juror No. 27, also stated that
23  she had had negative experiences with law enforcement. *Ibid*. As there were additional,
24  legitimate race-neutral reasons for excusing Juror No. 34, a comparative jury analysis does not
25  indicate that the prosecutor engaged in purposeful discrimination. This comparative analysis, as
26  well as the reasons offered by the prosecutor, the answers of the prospective jurors during voir
27  dire, and the trial court's credibility determination, the state courts could reasonably conclude
28  that the prosecution did not purposefully discriminate against African-Americans on the jury, but

8

1  rather had genuine, race-neutral reasons for challenging them.

2  As the Court of Appeal identified the correct federal standard applicable to petitioner's
3  claim, i.e., the three-part *Batson* test, and conducted the comparative juror analysis that federal
4  law calls for, the state court's rejection of petitioner's claim was not "contrary to" clearly
5  established federal law for AEDPA purposes. See *Williams*, 529 U.S. at 412-13 (state court's
6  decision is not "contrary to" federal law under Section 2254(d)(1) if it applies the correct federal
7  standard). Furthermore, the Court of Appeal also reasonably applied the federal standard for
8  *Batson*. Consequently, petitioner is not entitled to federal habeas relief based upon his first
9  claim.

   2. Ineffective Assistance of Counsel

11  Petitioner also claims that his Sixth Amendment right to effective assistance of counsel
12  was violated in connection with his decision to reject a plea offer. On June 21, 2004, petitioner's
13  attorney informed him of a plea bargain requiring him to plead guilty to all counts in return for
14  40 years in prison (Resp. Ex. J at 10). Petitioner rejected the offer. *Ibid.* Petitioner claims that
15  he was unaware of the scope of inculpatory evidence against him when counsel advised him
16  about the offer, and that he would have accepted the offer if he had known about such evidence.

17  In order to establish an ineffective assistance of counsel claim, petitioner must show that
18  (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a
19  reasonable probability that the result of the proceedings would have been different absent the
20  error. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Evaluation of counsel's performance
21  must be highly deferential: fair scrutiny requires that "every effort be made to eliminate the
22  distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct,
23  and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. There is a strong
24  presumption that counsel's actions fall within the broad range of reasonable professional
25  conduct. *Ibid.*

26  Petitioner has not proven that counsel acted unreasonably. Petitioner contends that
27  counsel only told him about two prosecution witnesses, and not about the tape recordings of
28  incriminating phone conversations and potential additional witnesses (Pet. at 18-19). The record

1  shows, however, that on the first day of trial, prior to the final rejection of the plea bargain,
2  defense counsel discussed – on the record and with petitioner present – that the prosecution had
3  recently produced new discovery comprised of over 50 telephone calls between petitioner and
4  petitioner's wife and mother (Resp. Ex. J at 3). In fact, at the opening of trial, with petitioner
5  present and in custody, defense counsel noted, "There's some new discovery People will be
6  producing which is still outstanding. It consists of tape recordings of calls that Mr. Martinez
7  made to his wife while in custody originally after his arrest . . . . Mr. Scheingart [prosecutor] has
8  reviewed some and may be introducing them" (*id.* at 1). The prosecution also revealed, on the
9  record, that he had 17 witnesses scheduled to testify, not just the two alleged victims of which
10 petitioner was already aware (*id.* at 6). In the ensuing colloquy, defense counsel stated that he
11 had extensive discussions regarding the plea offer with petitioner, petitioner's wife, and his
12 father (*id.* at 10). Despite defense counsel's advisement that the inculpatory evidence was
13 strong, petitioner nonetheless refused the offer (*ibid.*). When asked if defense counsel's
14 representation of these events were true, petitioner confirmed that it was (*ibid.*). Petitioner stated
15 that he felt that 40 years in prison was "too long a period of time to contemplate serving,
16 notwithstanding the fact that the penalty in this case is life" and notwithstanding defense
17 counsel's estimation to him that "the evidence against him is strong" (*ibid.*). This record shows
18 that petitioner was in fact made aware of the scope of the prosecution's inculpatory evidence on
19 the first day of trial – including additional witnesses and telephone conversations between
20 himself, his wife and mother – prior to the rejection of the plea offer. After learning of the
21 evidence, petitioner did not request to consult with his attorney, and he rejected the deal.
22 Therefore, petitioner's claim that he rejected the plea offer without knowing about the
23 incriminating evidence against him is belied by the record.
24     The state court's denial of petitioner's ineffective assistance of counsel claim was neither
25 contrary to, nor an unreasonable application of, clearly established federal law, nor did it result
26 in a decision that was based on an unreasonable determination of the facts in light of the
27 evidence presented. Accordingly, petitioner is not entitled to habeas relief on this claim.
28                                    **CONCLUSION**

1    For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

2    Rule 11(a) of the Rules governing Section 2254 Cases now requires a district court to
3 rule on whether a petitioner is entitled to a certificate of appealability in the same order in which
4 the petition is denied. Petitioner has failed to make a substantial showing that his claims
5 amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would
6 find this court's denial of his claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484
7 (2000). Consequently, no certificate of appealability is warranted in this case.

8    The clerk shall enter judgment and close the file.

9    **IT IS SO ORDERED.**

11   Dated: February __16__, 2011.

         WILLIAM ALSUP
         UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.08\MARTINEZ3911.RUL.wpd

11